United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IGNACIO RUIZ,<br><br>         Plaintiffs,<br><br>    v.<br><br>M. ELIOT SPEARMAN,<br><br>         Defendants. | Case No. 18-cv-07681-EMC   (EMC)<br><br>**ORDER CLARIFYING THIS COURT'S APRIL 10, 2023 ORDER**<br><br>Docket No. 63 |

## I.     INTRODUCTION

This case arises from the conviction of Ignacio Ruiz in the Contra Costa Superior Court and remedy granted to Mr. Ruiz per his petition for a writ of habeas corpus by this Court thereafter. Mr. Ruiz was offered a plea deal in 2012 that this Court found he rejected due to ineffective assistance of counsel in violation of the Sixth Amendment. After rejecting the deal, Mr. Ruiz lost at trial. He was convicted of first-degree murder, among other charges, and received a sentence less favorable than that in the deal; he was sentenced to life imprisonment without parole. He was also convicted of counts to which he would not have pled guilty under the plea deal. To remedy the harm from the ineffective assistance, this Court ordered the government to re-offer the original plea deal, which required Mr. Ruiz to plead guilty to two counts of second-degree murder in exchange for a 15-years-to-life sentence, with dismissal of all other counts and enhancements sought. After the order granting the habeas petition, the government offered a plea to Mr. Ruiz that added a waiver of Mr. Ruiz's right to pursue resentencing under California Penal Code section 1172.6—a law allowing resentencing for those convicted of murder pursuant to a theory of imputed malice or intent, such as felony murder. That waiver was not in the original plea as section 1172.6 was not in existence in 2012 as it did not become law until 2019. The Superior Court that reviewed the re-offered plea agreement approved of the inclusion of this

1  waiver. Mr. Ruiz now asks this Court for clarification of the remedy that it ordered in its April 10,
2  2023, decision when it ordered the government to reoffer the "original plea" from 2012. In
3  particular, is it appropriate to include the waiver of rights under section 1172.6 in the new plea
4  deal?

5        The "original plea," this Court ordered the government to re-offer to Mr. Ruiz did not
6  include a waiver of the right to pursue relief under Cal. Pen. Code § 1172.6. The purpose of the
7  relief ordered by this Court was to put Mr. Ruiz in the position he would have been in but for the
8  ineffective assistance of counsel – to replicate the plea offer made in 2012. The proposed waiver
9  is a new element and not appropriate for inclusion as a condition of the plea. In the but-for world,
10 Mr. Ruiz would have pled guilty to fewer counts, received a shorter sentence, and would still have
11 had the opportunity to pursue resentencing under section 1172.6, a statue enacted years later.

12       Thus, the Court clarifies its intent that the District Attorney re-offer to Mr. Ruiz the plea
13 deal wherein Mr. Ruiz is required to plead guilty to two counts of second-degree murder, carrying
14 two concurrent indeterminate sentences of 15 years to life, and wherein the government is to drop
15 all other charges and enhancements, i.e., the plea originally offered. The Court did not intend that
16 the plea offer include a section 1172.6 waiver since that was not part of the original deal.

17       **II.**      **FACTUAL AND PROCEDURAL BACKGROUND**
18 A.    Background of the case

19       Petitioner Ignacio Ruiz was charged with conspiracy to commit murder (Cal. Penal Code
20 §§ 182 (a)(1), 187), two counts of first-degree murder (Cal. Penal Code § 187) with multiple
21 special circumstance allegations (Cal. Penal Code §§ 190.2(a)(3), (a)(22)), and active participation
22 in a criminal street gang (Cal. Penal Code § 186.22(a)). *See* Docket No. 14 ("Habeas Order") at 1.
23 The charges included firearm enhancement allegations (Cal. Penal Code § 12022.53) and alleged
24 that the conspiracy and murder counts were committed for the benefit of a criminal street gang
25 (Cal. Penal Code § 186.22). *Id.* at 1. The first-degree murder charges carried a sentence of life
26 imprisonment without the possibility of parole.

27       In 2012, the District Attorney offered a pretrial plea of two counts of second-degree
28 murder for a sentence of 15 years to life in exchange for dropping all other charges and

1    enhancements. *Id.* at 3 (citing Docket No. 7 ("Ans."), Exh. 11 at 1 ("On February 18, 2012, the
2    Contra Costa County District Attorney offered to drop all other charges and enhancements if
3    Petitioner pleaded guilty to two counts of second-degree murder, carrying two concurrent
4    indeterminate sentences of 15 years to life.")).  Based on advice from Mr. Ruiz's counsel, Daniel
5    Cook and Kellin Cooper, that: (1) no lifers ever received parole (advice consistent with Mr.
6    Cooper's earlier statement to Mr. Ruiz that "if he took a plea that did not include a guaranteed
7    release date he would never be paroled," Docket No. 58-1 Exh. 1 (Declaration of Kellin Cooper
8    ("Cooper Decl.")) ¶ 5), and (2) he could rely on an accessory-after-the-fact instruction at trial
9    (which would have permitted the jury to convince on a lesser offense), Mr. Ruiz rejected the deal.
10   *See* Docket No. 15 ("Mot. to Alter Judgment") at 1.  Mr. Ruiz proceeded to trial.

11   At trial in the Contra Costa County Superior Court, the trial judge rejected Mr. Cook's
12   request for the lesser offense jury instruction. Mr. Ruiz was convicted of two counts of first-degree
13   murder, conspiracy to commit murder, and active participation in a criminal street gang, with
14   multiple murder and gang special circumstances and gang and firearm enhancements. *See* Cal.
15   Penal Code §§ 182(a)(1), 186.22(a) & (b)(1)), 187, 190.2(a)(3), (a)(22), 12022.53(b)–(d)). Mr.
16   Ruiz was then sentenced to 50 years to life and two consecutive terms of life without parole. The
17   California Court of Appeal affirmed the judgment on direct appeal.  Habeas Order at 4. The
18   California Supreme Court denied Mr. Ruiz's petition for review in 2016.  Docket No. 7-5. Mr.
19   Ruiz filed a habeas petition directly before the California Supreme Court, asserting ineffective
20   assistance of counsel via his counsel's ill-advice on the law regarding parole and the lesser-related
21   offense instructions. That petition was denied in 2018, without any comment. Docket No. 7-6.

22   On August 13, 2020, this Court granted Petitioner Ignacio Ruiz's petition for a writ of
23   habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction from Contra Costa County
24   Superior Court.  Habeas Order.  Respondent M. Eliot Spearman ("the government") filed a motion
25   to alter or amend the judgment and request for evidentiary hearing pursuant to Federal Rule of
26   Civil Procedure 59(e). Docket No. 15 ("Mot. to Amend").  The Court granted the government's
27   request for an evidentiary hearing, recognizing that the Court should consider evidence regarding
28   factual issues in dispute as to the habeas petition.  *See* Docket No. 26 (Order Granting

3

1  Respondent's Request for Evidentiary Hearing); Docket No. 62 (Order Denying Defendant's
2  Motion to Alter or Amend Judgment).[1]  On January 6 and 9, 2023, this Court held an evidentiary
3  hearing and received testimony from Mr. Cook and Mr. Ruiz regarding: (1) the likelihood of
4  parole had Mr. Ruiz pled to two second degree murder charges with indeterminate sentences of
5  fifteen years to life, and (2) the availability of a defense at trial based on a lesser included offense
6  of accessory after the fact, as well as (3) whether Mr. Ruiz was prejudiced by Mr. Cook's advice.
7  Thereafter, in consideration of the evidence presented at that hearing, the Court found in favor of
8  Mr. Ruiz, including finding he was prejudiced by the erroneous advice at issue, and denied
9  Government's Motion to Alter or Amend the Judgment, pursuant to Federal Rule 59(e) on April
10  10, 2023.  *See* Docket No. 62 ("Final Habeas Order").

Regarding the remedy ordered, in the Court's April 13, 2020, Habeas Order the Court ordered the "District Attorney of Contra Costa County [to] reinstate the offer of February 18, 2023[sic][2]."  Habeas Order at 26 (citing *Lafler v. Cooper*, 566 U.S. 156, 174 (2012)).  The Court reaffirmed the remedy in its April 10, 2023, Final Habeas Order: "[t]he Court orders the government to provide forthwith Mr. Ruiz with the original plea agreement offered."  Final Habeas Order at 22.

B.     Pending motion

Now pending before this Court is Mr. Ruiz's Motion for Clarification of this Court's April 10, 2023 Order.  Docket No. 63 ("Mot.").  At issue is whether the plea deal offered to Mr. Ruiz, which this Court ordered the government to re-offer, may include a waiver of ability to seek resentencing pursuant to California Penal Code § 1172.6—a statute not yet passed when the original plea deal was offered.  The government opposes the motion and seeks to include the

---

[1] The Court explained that consideration of the "Rule 59(e) motion is warranted to prevent manifest injustice resulting from a determination of disputed facts without giving the parties an opportunity to present live testimony on the critical question of what advice was given to Mr. Ruiz and whether any ineffective assistance prejudiced Mr. Ruiz, questions that turn on witness credibility. Disputed facts of this nature warranted an evidentiary hearing which this Court had not previously held."  Docket No. 62 at 6 (citing *Cullen v. Pinholster*, 563 U.S. 170, 205 (2011) (Breyer, J., concurring and dissenting in part) (holding that an evidentiary hearing may be needed when the state court failed to meet the requirements of § 2254(d)).

[2] This refers to the February 18, 2012, plea offer.

United States District Court
Northern District of California

waiver as part of the plea offer. Docket No. 64 ("Opp.").

As stated previously, this Court ordered that the government offer Mr. Ruiz the "original plea agreement offered." Final Habeas Order at 22. The parties met and conferred for some time after this issuance of the Final Habeas Order. Mot., Exh. A ¶¶ 3-10. Ultimately, the government decided to ask the Contra Costa County Superior Court ("Superior Court") not to vacate the convictions of two counts alleged at trial Count 1 (conspiracy to commit murder) and Count 4 (active participation in a criminal street gang). Mot., Exh. D. Yet, the original plea offer required Mr. Ruiz to plead guilty to two counts of second-degree murder in exchange for a 15-years-to-life sentence, with dismissal of all other counts including Counts 1 and 4. *See* Habeas Order at 3, citing Ans., Exh. 11 at 1. The government also sought to add a section 1172.6 waiver to the plea agreement. That statute provides a procedure for defendants convicted of murder, attempted murder, or voluntary manslaughter to petition for resentencing if their convictions were based on the felony murder rule or the natural and probable consequences doctrine. Cal. Pen. Code § 1172.6. Section 1172.6 was not yet law when the government offered its original plea in February 2012; the statute became effective nearly seven years later, on January 1, 2019. *See* S.B. 1437 (2017-2018 Reg. Sess.), Stats. 2018, ch. 1015, § 4. The original plea agreement perforce did not include waiver of this yet-to-exist statute or require waiver of future rights.

The Superior Court agreed with Mr. Ruiz that it would be improper to leave the convictions including those on Counts One and Four intact. *See* Mot. Exh. G at 15:3-27. However, the Superior Court approved of including the § 1172.6 waiver in the plea agreement. The Superior Court stated:

> I don't have to give him the benefit of 1172.6 in terms of what's going to happen before the Court now. Had I thought that, based on my review of the factual record, that he was not a major participant in that crime, perhaps, had he been acquitted of the conspiracy and so it was just the standalone murder convictions on the felony murder rules that are -- have since been tossed, I think he'd have a more favorable argument.· But given that he was convicted of active gang participation and conspiracy to commit the murders in the first place, that those aspects have been upheld on direct appeal, I'm not going to consent to any undoing of the bargain that doesn't come with an 1172.6 waiver.

> With some hesitation, I'm going to have you win on Counts 1 and 4; but I'm not going forward without an 1172.6 waiver.

Exh. G at 15:3-27 (December 15, 2023 hearing). The parties returned to court on January 23, 2024. Counsel for Mr. Ruiz reiterated his objection to the imposition of a waiver and indicated he would be seeking clarification and relief from a higher court. The Superior Court agreed that Mr. Ruiz was entitled to pursue other options and removed the case from calendar pending further orders from either this Court or the California Court of Appeal:

> So not knowing exactly how a Court of Appeal might come down on that, I'm simply stating that the Feds were silent on the 1172.6 issue. And in my view, restoring the defendant to a position where he's got a tough decision to make, either to go to retrial or to accept the offer which apparently he wants, that's the decision. It's not, accept the offer, plus. But, again, if the Feds say that's what they intended or the DCA 1 says, that's the valid application of that, that's how it should be interpreted in light of legislature's enactment of PC1127.6, I'm a hundred percent on board with what you're proposing, Mr. Campbell. But I think the order of Feds falls short.

Exh. H at 11:21-12:4.

Mr. Ruiz now asks this Court to "clarify what it meant when it ordered the prosecution to re-extend its 'original offer.'" Docket No. 65 ("Reply") at 2. Specifically, whether the "original offer" contemplates the waiver that is now required by the prosecution of Mr. Ruiz's right to seek relief pursuant to § 1172.6. Mr. Ruiz explains that he does not seek an advisory order or specific performance, i.e., an order directing the Superior Court to approve the original plea offer. Reply at 3-4. Rather, Mr. Ruiz asks only for this Court's clarification of the relief ordered in its Final Habeas Order. The government argues that this issue is not ripe for adjudication before this Court because Mr. Ruiz concedes he may not qualify or apply for resentencing under § 1172.6. Opp. at 3-4. The government also argues that the government and Superior Court acted properly in requiring that the § 1172.6 waiver be added to the original plea. *Id.* at 4-10.

### III.   DISCUSSION

A.   Ripeness

The government argues the clarification motion is not ripe for adjudication because Mr. Ruiz "concedes that he may not qualify or even apply for resentencing under section 1172.6." Opp. at 3-4. Specifically, Mr. Ruiz stated in his opening brief that "[t]he People's fear that he

6

1  will immediately and successfully challenge his conviction after entering the plea is unfounded."
2  Mot. at 12.  Mr. Ruiz explained that this is because he may not succeed in being granted relief,
3  and, because he has another potential avenue for release from prison by way of parole.  *Id.* at 12-
4  13.  Mr. Ruiz rebuts that he faces imminent and permanent waiver of rights with no opportunity
5  for future review of propriety of that waiver; thus, he argues, the case is ripe.  Reply at 3-5.

6       A district court has broad discretion in interpreting its prior orders.  And this approach is
7  preferred: "when questions arise as to the interpretation or application of an [ ] order, a party
8  should seek clarification or modification from the issuing court, rather than risk disobedience and
9  contempt." *Institute of Cetacean Research v. Sea Shepherd Conservation Soc'y*, 2017 WL
10  1057644, at *2 (W.D. Wash. March 17, 2017) (quoting *Regents of the Univ. of Cal. v. Aisen*, No.
11  15-cv-1766-BEN (BLM), 2016 WL 4681177, at *1 (S.D. Cal. Sept. 7, 2016) (citing *McComb v.*
12  *Jacksonville Paper Co.*, 336 U.S. 187, 192, 69 S.Ct. 497, 93 L.Ed. 599 (1949); *Regal Knitwear*
13  *Co. v. Nat'l Labor Relations Bd.*, 324 U.S. 9, 15 (1945))).

14       Still, the issue must be ripe for adjudication.  *See Thomas v. Anchorage Equal Rts.*
15  *Comm'n*, 220 F.3d 1134, 1138-1142 (9th Cir. 2000).  To this end, the plaintiff must face "a
16  realistic danger of sustaining a direct injury" that is not too "imaginary" or "speculative."  *Id.* at
17  1138 (citing *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)).  As to
18  prudential ripeness, a court is "guided by two overarching considerations: 'the fitness of the issues
19  for judicial decision and the hardship to the parties of withholding court consideration.'"  *Id.* at
20  1141 (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 149 (1967)); *see also Tingley v. Ferguson*,
21  47 F.4th 1055, 1070 (9th Cir. 2022), *cert. denied*, 144 S. Ct. 33, 217 L. Ed. 2d 251 (2023) (quoting
22  *Thomas*, 220 F.3d at 1141).

23       For example, in *F.V. v. Jeppesen*, 466 F. Supp. 3d 1110, 1119 (D. Idaho 2020), the court
24  determined that a clarification motion was not yet ripe for review.  There, the plaintiffs sought
25  clarification of an injunctive order, preventing agency employees from enforcing a policy of
26  automatically rejecting applications from transgender people to change the sex listed on their birth
27  certificates.  *Id.* At 1117.  The court found that a request to clarify the scope of the injunction, i.e.,
28  whether it applied to only a policy in place in 2018 was ripe for review; the court found the order

enjoined categorical denial pursuant to *any* policy. *Id.* at 1118. However, plaintiffs also requested that the Court conclude that HB 509, the superseding statute, violated the injunction. *Id.* The court found that this issue was not yet ripe because the implementing agency had yet to interpret or apply the policy. *Id.* at 1118-19. In other words, it was not yet clear that the agency would seek to deprive transgender individuals a right to apply for birth certificates under the statute at issue. *Id.* at 1118-19. In this sense, the dispute was still hypothetical. *Id.*

The clarification that Mr. Ruiz seeks is not based upon a hypothetical desire to deprive Mr. Ruiz of a right. The government, currently, will only offer Mr. Ruiz a plea requiring that he waive the right to apply for resentencing under section 1172.6. *See* Mot., Exh. F at 5 ("The People will not engage in said plea bargain without a stipulation [including a section 1172.6 waiver]."). And the Superior Court will accept the plea with this waiver absent intervention. *See* Mot., Exh. G at 15:3-27, Exh. H at 11:21-12:4. The harm at issue, i.e., improper waiver is thus far from speculative; it is imminent and will occur absent interference. This distinguishes the case from *Jeppesen*, where it was not clear if the agency would seek to deprive plaintiffs from applying for relief (there, changing sex listed on the birth certificate), here the government has sought, and indeed would be successful, in preventing Mr. Ruiz from applying for relief under section 1172.6.[3]

And Mr. Ruiz need not show that he would ultimately prevail in obtaining statutory relief to establish ripeness. If Mr. Ruiz is forced to waive his statutory rights under § 1172.6, he necessarily forfeits any relief that may be afforded by this statute; the certain loss of that relief is an injury. *See Jeppesen*, 466 F. Supp. 3d at 1117-19 (determining that denial of opportunity to be considered for change in sex listed on birth certificate justiciable issue). To this end, loss of *access* to judicial relief itself is often recognized as a cognizable harm. *See, e.g.*, *Gramegna v. Johnson,* 846 F.2d 675, 677 (11th Cir. 1988) (citing *Procunier v. Martinez*, 416 U.S. 396, 419

---

[3] For a similar reason, the government's citation to *Poland v. Stewart*, does not require a different result. 117 F.3d 1094, 1104 (9th Cir. 1997). In *Poland* the court found the issue of whether execution by lethal gas would violate the eighth amendment was not ripe for adjudication because absent intervention, the prisoner would be executed by lethal injection, not lethal gas. *Id.* Here, the inverse is true. Mr. Ruiz is going to suffer the complained of harm—the inclusion of a waiver in the plea deal—absent intervention.

(1974) (treating deprivation of prisoners' access to courts, through hindering ability to send or receive mail, as a cognizable harm). Mr. Ruiz thus faces a direct injury through denial of the opportunity to seek relief afforded by the statute.

However, as the government points out, it is not clear exactly when Mr. Ruiz would apply for resentencing under § 1172.6. Specifically, Mr. Ruiz stated in his opening brief that "[t]he People's fear that he will immediately and successfully challenge his conviction after entering the plea is unfounded." Mot. at 12. Mr. Ruiz explained that this is because he has another potential avenue for release from prison by way of parole. *Id.* at 12-13. In other words, Mr. Ruiz may not ultimately need to pursue statutory relief under 1172.6; his attempt at parole may be sufficient. But that is not the issue. Forcing one to waive a future right, even if there is not guarantee such rights may come into fruition works a real and immediate harm. The waiver sought here, once given, will be irreversible. Mr. Ruiz will be forever barred from seeking to assert his right to seek relief under Section 1172.6 even if that should be his only path to freedom, as courts are bound to enforce unambiguous waivers of rights in plea agreements. *See United States v. Allen*, 434 F.3d 1166, 1174 (9th Cir. 2006) ("A plea agreement is a contract and is enforced as such."); *United States v. Mutschler*, 152 F. Supp. 3d 1332, 1335 (W.D. Wash. 2016) (collecting cases). Thus, he faces direct and imminent injury. This is so regardless of the likelihood that Mr. Ruiz would and could actually seek such relief so long as there is any possibility that he could at some future point seek relief under the statute. Ripeness is ultimately "a question of timing, designed to prevent courts from 'entangling themselves in abstract disagreements' by avoiding premature adjudication of matters not yet ready for judicial intervention." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1122 (9th Cir. 2009) (quoting *Anchorage Equal Rights Comm'n*, 220 F.3d at 1138). Given the concreteness of the injury resulting from the proposed waiver, this is not a "premature adjudication of matters not yet ready for judicial intervention." The motion for clarification is ripe.

B.   Clarification

As stated above, the issue properly before this Court is whether in its view, its April 10, 2023, order directing the government offer its "original plea" is satisfied when the government

9

1  adds a Section 1172.6 waiver.  The "original plea" is the plea agreement offered to Mr. Ruiz by
2  the District Attorney on February 18, 2012.  *See* Habeas Order at 26 (ordering the "District
3  Attorney of Contra Costa County [to] reinstate the offer of February 18, 2023[sic]"); Final Habeas
4  Order at 22 ("The Court orders the government to provide forthwith Mr. Ruiz with the original
5  plea agreement offered.").  This plea deal requires Mr. Ruiz to plead guilty to two counts of
6  second-degree murder, carrying two concurrent indeterminate sentences of 15 years to life, and the
7  government to drop all other charges and enhancements.  *See* Habeas Order, (citing Ans., Exh. 11
8  at 1 ("On February 18, 2012, the Contra Costa County District Attorney offered to drop all other
9  charges and enhancements if Petitioner pleaded guilty to two counts of second-degree murder,
10 carrying two concurrent indeterminate sentences of 15 years to life.")).  That offer said nothing
11 about a waiver of Section 1172.6 rights or any other future rights.

12  In *Lafler v. Cooper*, 566 U.S. 156 (2012), the Court explained that the remedy for a Sixth
13 Amendment violation must "neutralize the taint of a constitutional violation while at the same
14 time not grant a windfall to the defendant or needlessly squander the considerable resources the
15 States properly invested in the criminal prosecution."  *Id.* at 170 (citations and quotations omitted).
16 The Court clarified that if a defendant rejected a guilty plea to a count or counts less serious than
17 those for which defendant was convicted, the proper exercise of discretion to remedy the injury
18 "may be to require the prosecution to reoffer the plea proposal."  *Id.* at 171.  Thereafter, "the judge
19 [reviewing the plea agreement] can then exercise discretion in deciding whether to vacate the
20 conviction from trial and accept the plea or leave the conviction undisturbed."  *Id.*

21  As noted, the original plea deal did not include a section 1172.6 waiver.  Nor could it
22 have—that statute did not come into existence until 2019, nearly seven years after the original plea
23 was offered in 2012.  *See* S.B. 1437 (2017-2018 Reg. Sess.), Stats. 2018, ch. 1015, § 4.  And a
24 plea that would have required Mr. Ruiz to waive this future statutory right would have violated
25 California statutory law; California Penal Code § 1016.8(a)(4) provides that: "[a] plea bargain that
26 requires a defendant to generally waive unknown future benefits of legislative enactments,
27 initiatives, appellate decisions, or other changes in the law that may occur after the date of the plea
28 is not knowing and intelligent."  In other words, the original plea simply did not and could not

10

have included the waiver the government now seeks to add to the plea.[4]

A habeas remedy should put an individual "back in the position he would have been in if the Sixth Amendment violation never occurred." *Johnson v. Uribe*, 682 F.3d 1238, 1239 (2012); *see also Lafler*, 566 U.S. at 170. Absent the constitutional violation, Mr. Ruiz would have accepted the plea offered in 2012, and then seven or so years later, would have the option to challenge his sentence pursuant to section 1172.6. He receives no windfall from a plea deal that allows him to pursue this relief made available after the plea which would have been accepted in 2012. The government, on the other hand, would be put in a better position if it could retrospectively add the waiver; in the but-for world in which the 2012 plea was offered, that plea could not have validly included the waiver. Accordingly, this Court properly ordered the government to re-offer the original plea deal, absent the waiver at issue, to remedy the constitutional violation suffered by Mr. Ruiz.

Thus, the Court reaffirms its prior decision, ordering the government to re-offer its original plea deal. *See Lafler*, 566 U.S. at 171 (proper remedy for habeas relief "may be to require the prosecution to reoffer the plea proposal" and holding that ordering such a reoffer was the appropriate remedy in the case at bar). The Court further clarifies that it intended that the government reoffer Mr. Ruiz the original plea requiring Mr. Ruiz to plead guilty to two counts of second-degree murder, carrying two concurrent indeterminate sentences of 15 years to life, and the government to drop all other charges and enhancements. That plea did not and should not include a section 1172.6 waiver.

---

[4] There was some confusion in proceedings before the Superior Court as to whether the original plea required Mr. Ruiz to waive all appellate rights, and whether that waiver would prevent Mr. Ruiz from pursuing section 1172.6 relief in the future. *See* Mot. at 9 (citing Exh. H. at 10:17-22 ("Had he accepted the offer back then, it was extended with an appellate waiver demand.")). However, the government agrees that an appellate waiver from a 2012 plea would not preclude Mr. Ruiz from seeking 1172.6 relief now. *See* Mot. at 9. ("Ruiz contends that the superior court incorrectly suggested that section 1172.6 is not available to defendants who were convicted by plea and that a defendant can waive his right to future ameliorative changes in the law. Dkt. No. 63 at 9-10. Respondent does not dispute that section 1172.6 is available to defendants who accepted a plea offer or that California law prohibits the waiver of future rights."). This concession is appropriate because, at most, the original plea offer could have required Mr. Ruiz to waive all then-existing right to review of his conviction (by way of appeal or otherwise)—but not the future right for relief pursuant to 1172.6. *See* Cal. Pen. Code § 1016.8(a)(4)

11

To be clear, this Court is not directing the Superior Court as to how it should review the plea once offered and accepted (if it is accepted). The scope of its review may be informed by, *inter alia*, the Supreme Court's decision in *Lafler*, 566 U.S. at 174-75.

## IV. CONCLUSION

The Court reaffirms its April 10, 2023, decision, ordering the government to re-offer Mr. Ruiz the February 18, 2012, plea deal, and clarifying its intent that such plea offer not include a waiver of the right to pursue relief under Cal. Pen. Code § 1172.6.

**IT IS SO ORDERED**.

Dated: April 1, 2024

_____
EDWARD M. CHEN
United States District Judge